(Decided 1st July, 1870.)

---

SAMUEL B. ANDERSON and DUVALL, KEIGHLER & Co., Assignees of HALL & GREENWELL, *vs.* WILLIAM H. TUCK.

*Judgment Liens — Practice in the Court of Appeals.*

Judgments rendered at the same term of Court, but on different days, do not relate to the first day of the term, and become effective as of that

date; they are liens on the real estate of the debtor, only from the dates at which they are respectively entered on the docket, and are entitled to priority accordingly.

It would seem that as between judgments rendered on the same day, an averment would not be allowed as to which had priority in point of fact.

Whether a judgment rendered without date entered of record, is to be conclusively referred by relation to the first day of the term, or whether in favor of judgments in fact prior in date, the actual priority will be allowed to be shown, *Query?*

The absence of exceptions to an account stated by the auditor, not as representing his own views of the rights of the parties, but under instructions from one of the parties as a mode of presenting and illustrating his own claim, will not prevent parties affected by the account, from taking objections to it in the Court of Appeals.

APPEAL from the Circuit Court for Prince George's County, in Equity.

For the facts relating to this appeal, reference may be had to the preceding case (*ante* 209) which was argued at the same time. Samuel B. Anderson excepted to so much of the auditors account "E" as allowed a portion of the trust fund to the judgment of William H. Tuck; exceptions were not taken by Duvall, Keighler & Co. The present appeal is taken from so much of the order of the 9th of July, 1869, as ratified and confirmed account "E," which allowed the judgment of William H. Tuck, equally with the judgments of the appellants, and from so much of the order as rejected accounts "C" and "D," and instructed the auditor to allow judgments of the same term of Court equally in the distribution, without reference to the day on which they were rendered.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, GRASON, MILLER and ALVEY, J.

*C. C. Magruder* and *Peter W. Crain,* for the appellants.

Judgments in this State are liens on real estate from their dates, and the judgments confessed by Thomas F. Bowie to

the appellants, on the 6th day of November, 1857, were liens on his real estate from that date, and the lien so acquired cannot be impaired or overreached by the judgments of a subsequent date, upon the hypothesis that all judgments are presumed to have been given on the first day of the term and relate back to that day. By legislative enactments of the State, as well as by the decisions of the Court of Appeals, judgments are liens only from their date, and do not relate to the first day of the term of the Court, so as to create a lien.

In England, before the *Statute of* 29 *Charles* II, *ch.* 3, *secs.* 14, 15, a judgment operated as a lien on the lands of the debtor, from the first day of the term of the Court at which it was rendered. This lien did not exist at common law, but was created by virtue of the *Statute of Westminster*, 2, *ch.* 18, which first subjected real estate to the payment of debts.

Before the *Statute of* 29 *Charles* II, it was the practice of the Courts of Westminster to entitle their judgments and all records as of the term generally; they were not dated otherwise than by stating the time and year they were entered. See 2 *Bacon's Abridgement*, 731; *Swann vs. Brown*, 3 *Burr.*, 1595; 3 *Salkeld's Rep.*, 211, 212.

This Act of the 29 *Charles* II, *ch.* 3, was incorporated into and made part of the laws of this State. The practice of the Courts in Maryland in entering judgments, have been in pursuance of that Act, and the memorandum of the date of the judgment is found on every record. But it must be admitted that the common law of England has been materially changed by various Acts and laws of the State of Maryland. See *Act of* 1796, *ch.* 93, *sec.* 20; *Act of* 1805, *ch.* 65, *sec.* 13; *Code, Art.* 29, *sec.* 6; *Act of* 1809, *ch.* 153; *Act of* 1811, *ch.* 16; *Act of* 1823, *ch.* 194; *Act of* 1861, *ch.* 7. These various Acts of Assembly and the Code illustrate the views of the appellants in reference to the lien of judgments, and show that they take effect from their date, and not from the first day of the term. In support of the views urged by the appellants, the following

authorities were referred to. *Jones vs. Jones,* 1 *Bland,* 447, 448; *Miller vs. Allison,* 8 *G. & J.,* 36; *Coombs vs. Jordan,* 3 *Bland,* 298; *Hanson vs. Barnes' Lessee,* 3 *G. & J.,* 359; *Murphy vs. Cord,* 12 *G. & J.,* 191; *Doub vs. Barnes,* 4 *Gill,* 11; *Tayloe vs. Thompson,* 5 *Peters,* 368; *Miles vs. Knott,* 4 *Gill,* 452; *Eschbach vs. Pitts,* 6 *Md.,* 71; *Martin vs. Martin,* 7 *Md.,* 378; *Davidson vs. Myers,* 24 *Md.,* 548.

*William H. Tuck,* for the appellee.

Account E was properly ratified, because judgments rendered at the same term take effect by relation, from the first day of the term, and are liens from that term. This is the rule at common law, and no Act of Assembly has made the law otherwise in this State. 1 *Arch. Pr.,* 40–227, (*Ed. of* 1838); 1 *Sell. Pr.,* 509; 2 *Tidd's Pr.,* 935, 971; 2 *Greenleaf's Cruise on Real Prop.,* 43; *Jones vs. Jones,* 1 *Bland,* 447; *Greenway vs. Fisher,* 7 *Barn. & Cress.,* 436.

By 29 *Charles* II, *chap.* 3, secs. 13, 14, 15, the law was changed so far only as to make judgments take effect from the day of signing, *as against purchasers bona fide* and for valuable consideration; but from that time, *as between the parties to the judgments,* the law in England has been as before the Statute.

In *Arch. Pr.,* 227, "*Relation of Judgments,*" it is said, as far as relates to purchasers, a judgment affects the lands of the party only from the time it is signed, "but as to all other persons but purchasers the judgment, as it affects lands, relates to the first day of the term of which it is signed."

No Act of Assembly, or decision of the Court of Appeals, has been cited, shewing that the doctrine of relation of judgments has been repealed in this State; but it is said that it has been the practice to enter on the docket the day of confessing judgment.

This would only shew that the Statute of Charles had been followed in our Courts, for the purpose of protecting purchasers.

Anderson, *et al. vs.* Tuck.

The common law will not be abrogated by mere construction. Even where a Statute professes such repeal, it will not operate beyond the letter of the law, or the plain meaning collected from the words of the Act. *Hooper vs. Mayor, &c.,* 12 *Md.,* 464; *Keech vs. Rail Road,* 17 *Md.,* 32.

Hence, the Statute of Charles will not be extended, so as to repeal the common law entirely on this question.

In the cases referred to on the other side, the question does not appear to have arisen as between judgments of the same term; and when the Courts speak of judgments being liens, or taking effect from their dates, the inquiry still remains, what is the date? Is it the day of entering judgment, or the first day of the term?

If there be error in the order ratifying account E, Duvall, Keighler & Co. cannot now complain or object, because they did not except to the account in the Court below, and as to them the order will be affirmed.

ALVEY, J., delivered the opinion of the Court.

On this appeal the leading question is whether, by our practice, judgments rendered at the same term of Court all have relation to the first day of the term, so that no priority as between them can be claimed in the distribution of the proceeds of the real estate of the debtor upon which the judgments have attached as liens.

It is a general rule, in the common law of England, that all judgments rendered during the term relate back to the first day of the term, and are considered as rendered on that day. This general intendment of law is supposed to be founded in principles of convenience, and is recognized and asserted in many decided cases. But it has been entirely abolished as against purchasers by the Statute of Frauds and Perjuries, whereby it is declared that all judgments as against purchasers *bona fide,* for valuable consideration, of lands, &c., to become charges thereon, shall, in consideration of law, be judgments only from such time as they shall be signed by the

proper officer, whose duty it is to note the day of the month and year of such signing; and that such judgments shall not relate to the first day of the term whereof they are entered. This Statute provision is confined to the case of purchasers, and all other cases are to be determined by the general rule, and such exceptions thereto or qualifications thereof as may have become established in practice.

Has, then, this general rule any well founded exceptions or qualifications, such as embrace the case before us? We think it has, and that a brief examination of the authorities will suffice to show the extent of such exceptions or qualifications.

In 3 *Salk.*, 212, Ch. Justice HOLT states the rule thus: " A judgment shall have relation to the first day of the term, as if it was given on that very day, *unless there is a memorandum to the contrary,* as where there is a continuance of the cause till another day in the same term." And in accordance with such qualification we find the rule subsequently stated by Lord MANSFIELD, in the case of *Swann vs. Brown,* 3 *Burr.,* 1595. There the question was whether the judgment related to the *essoin-day* of the term; or to any day prior to the *essoin-day* of the return. Of this the learned Judge said the judgment could not relate to the first day of the term, because it could not be given before the return of the writ, *which appeared by the record to be in the term;* but that it did relate to the *essoin-day* of the writ; and he declared emphatically that " where any such matter *is apparent upon the face of the record,* the judgment then relates only so far back as it may, *consistently with the record,* be intended or supposed to relate."

In the case of *Lord Porchester vs. Petrie,* 3 *Douglas,* 361, a leading case upon the subject, it was decided that all judgments, as a general rule, relate to the first day of the term, and that the priority of one of two judgments signed on the same day could not be averred. Two of the questions in that case were: 1st. Whether the priority of one judgment over another could be averred, *when it was admitted on the record* that both judgments were given on the same day; and 2d.

Supposing that such an averment could be made, whether it was a fact that could be tried by the country. The first of these questions was resolved in the negative. and in regard to the second, it became unnecessary to decide it. But in the opinion of the Court, delivered by Lord MANSFIELD, reference was made to cases and their authority admitted, where the ordinary relation of the judgment to the first day of the term was limited or restrained by a *memorandum*, rendering it inconsistent with the record for the general intendment of law to prevail. Speaking of the case of *Hays vs. Wright, Yelv.,* 35, it was said : " It is there allowed that, in point of law, every judgment relates to the first day of the term ; but the Court thought it was admitted on that record that the former judgment was given after the 20th of April. So in the case of *Miller vs. Bradley,* (8 *Mod.,* 189,) the Court held, that if it appeared by continuances *that it was not a judgment till a particular day in the term,* it should not relate to the first day of the term."

This would be sufficient to show that the general rule of relation is not of invariable application, and whether it can be applied in any case will always depend upon the facts displayed of record. But in the more recent case in the Exchequer of *Bennett vs. Isaac,* 10 *Price,* 154, GRAHAM, B., was even more explicit than any of the Judges in the preceding cases, in stating under what circumstances the Court would disregard the principle of relation, and allow the truth of the case to prevail over the fiction of law. He said: " A judgment of the vacation being considered as referring to the first day of the term, is merely a fiction of law ; and it may have many good effects, as the rendering a search more easy. But that fiction must not be suffered to work an injustice, and that is an established maxim of the law. The Court, to prevent its operating injuriously, may, and frequently does inquire of the fact of the actual day on which judgment was entered up, as for the purpose of ascertaining whether the case is within the Statute of Limitations, and on other occasions of the like

nature. By inspection of the record we find that an imparlance was granted till the 23d of January, and from the marginal note we learn the precise day on which judgment was actually signed; *and the marginal note is part of the record,* and it is made so for the express purpose of preventing injustice in consequence of the legal fiction."

In our practice judgments are never in fact signed, as in England, but are entered either in the presence or by the express order of the Court, and the docket is in fact the judgment roll, and all the entries on it are matters of record. Hence, the date of the rendition of the judgment, which, in all cases, should be entered on the docket, is not only a matter of record proving itself, but is part of the judgment, and all the incidents of the judgment, as to the time of their attachment, must have reference to such date.

Seeing to what qualification the general rule of relation is subject, what is the case before us?

There are five judgments of the Circuit Court for Prince George's county, rendered at the November Term, thereof, 1857. The first four bear date the 6th of November, 1857, and the fifth is dated the 11th of the same month. And it is now claimed that this fifth judgment, though dated several days subsequent to the other four, should have equal priority with them, and that the distribution from the insolvent estate should be *pro rata* to their respective amounts; and this upon the principle of relation, by which all judgments of the same term are taken, to be rendered on the first day of the term.

Now, to indulge this doctrine of relation contended for by the appellee as applicable to this case, would be a singular instance of allowing a palpable truth to be overcome by fiction. All of these judgments bear their respective dates on their very face, and such dates are therefore provable of record; and if, notwithstanding, the principle of relation be applied, the record evidence is thereby utterly refuted and nullified, and a mere fiction substituted in its stead. No Court of Justice should ever allow a fact of record thus to be perverted.

The fiction of relation being excluded by the facts of record, the liens attach from the respective dates of the judgments, and they are entitled to priority accordingly. And this accords with what has been repeatedly declared by learned Judges of this State, when speaking of the time from which the judgment lien has existence. As in the cases of *Jones vs. Jones*, 1 *Bland*, 448; *Coombs vs. Jordan*, 3 *Bland*, 298; *Hanson vs. Barnes*, 3 *Gill & John.*, 359, and *Miller vs. Allison*, 8 *Gill & John.*, 36, in each of which it was said that judgments create liens on the real estate of the debtor from the date of rendition.

To apply the doctrine of relation to judgments like those before us would, most manifestly, work great injustice to those who have supposed that the lien became effective only from the actual date of the judgment. The lien itself is the mere consequence of the right to sue out execution to affect the lands of the debtor; and it appears rather anomalous at any rate, that it should be allowed to reach back from the last, it may be, to the first day of the term, and affect all persons concerned, except purchasers for value, during a period of time when neither judgment nor right of execution existed. It would appear to be neither calculated to promote justice, nor consistent with the equitable doctrine of notice.

As between judgments rendered on the same day, whether an averment will be allowed as to which has priority in point of fact, is a question that would appear from the authorities to be clearly settled in the negative; but whether a judgment rendered without date entered of record is to be conclusively referred by relation to the first day of the term, or whether, in favor of judgments in fact prior in date, it will be allowed to be shewn the actual priority, is a question of some dispute; though the reason and justice of the thing would seem to require that the actual date of the judgment, over which priority is claimed, should be allowed to be shewn; for, as Lord TENTERDEN, C. J., observed, in regard to this question of the relation of a judgment, in the case of *Lyttleton vs. Crosse*,

3 *Bar. & Cres.*, 317, " it is a general rule, that where it is for the interest of the party pleading to show that a proceeding did *not* take place at the precise time when by fiction of law it is supposed to have happened, it is competent for him to do so." And, in the same case, Mr. Justice BAILEY, said: "Whenever a fiction of law works injustice, and the facts which by fiction are supposed to exist are inconsistent with the real facts, a Court of Law ought to look to the real facts." And if so in a Court of Law, *a fortiori* should a Court of Equity regard the real facts rather than those supposed by fiction.

It is insisted, however, that although there be error in account E, because of the allowance of equal priority to the judgment of the appellee with the judgments of the appellants, the order ratifying that account cannot be reversed in this Court, inasmuch as the appellants did not file in the Court below exceptions to the account under the Act of 1861, ch. 33.

To this position we cannot accede. Account E was not stated by the auditor to represent his own views of the rights of 'the parties, but was stated at the request of the appellee, and as a mode of fully presenting and illustrating his own claim as against those of other creditors. Such an account, brought into the cause with other accounts presenting different views of the conflicting claims of parties, does not require exceptions to be filed thereto, in order to enable parties affected by it to take objections to it in this Court. The Act of 1861, ch. 33, is but the re-enactment of the provision in the Act of 1825, ch. 117, sec. 2, in regard to exceptions to accounts, and under this last mentioned Act it was held, in *Wells vs. Beall*, 2 *Gill & John.*, 458, that it was not necessary to file exceptions to the auditor's report, to take advantage of objections in the Appellate Court, which were raised by the pleadings in the cause, and which did not depend upon the state of the account, though an account might be necessary to ascertain the extent of the claim.

And so, in the case of *Dennis vs. Dennis*, 15 *Md.*, 73, it was held, that accounts made by the auditor in accordance with the instructions of the parties, both as to principles and details, did not require exceptions to be filed to enable parties to take objections to them in this Court.

The order of the Court below, of the 9th of July, 1869, in so far as it ratifies account E, must be reversed, as to the distribution to the judgments of the appellants, and the cause remanded, that another account be stated in accordance with the principles of this opinion, and the decree herewith filed.

*Order reversed and cause remanded.*

(Decided 21st October, 1870.)